## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CATHY F. PAULEY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-47 SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 16. Defendant filed a Brief in Support of the Answer. ECF No. 17. The Court has reviewed

the parties' briefs and the entire administrative record, including the transcripts and medical

evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.    Factual and Procedural Background

On October 22, 2020, Plaintiff Cathy F. Pauley protectively filed an application for

disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, with an alleged onset date

of May 16, 2017. Tr. 379, 485-94. Plaintiff subsequently amended her alleged onset date to

February 8, 2018. Tr. 504-05. Plaintiff's application was denied on initial consideration and

---

[1] At the time this case was filed, Kilolo Kijakazi was the Commissioner of Social Security. Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Martin J. O'Malley for Kilolo Kijakazi in this matter.

reconsideration. Tr. 395-99, 404-09. On May 6, 2021, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 410-11.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on October 22, 2021. Tr. 338-66. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Delores E. Gonzalez. *Id*. On December 7, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 252-76. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 463-65. On November 15, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a

3

physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."

*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for

*providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the

claimant's "complete medical history, including arranging for a consultative examination(s) if

necessary, and making every reasonable effort to help [the claimant] get medical reports from

[the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the

ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not

disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work,

the burden of production to show the claimant maintains the RFC to perform work which exists

in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*,

574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an

adjustment to other work which exists in significant numbers in the national economy, the

Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant

cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At

Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of*

*persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision,

the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record,

whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

4

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2023. Tr. 256. Plaintiff has not engaged in substantial gainful activity since February 8, 2018, the amended alleged onset date. Tr. 258. Plaintiff has the severe impairments of "degenerative disc disease, degenerative joint disease right foot and left knee, obesity, and asthma." Tr. 258-59. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 259-60. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally balance (as defined in the Dictionary of Occupational Titles as Selected Characteristics of Occupations); occasionally stoop, kneel, crouch, and crawl; with no exposure to respiratory irritants such as dust, fumes, odors, gases, and poor ventilation more than would be present in a standard office environment.

Tr. 260.

The ALJ found Plaintiff is capable of performing past relevant work as an accountant because such work does not require the performance of work-related activities precluded by her RFC. Tr. 272. The ALJ concluded Plaintiff has not been under a disability, as defined in the

Social Security Act, from February 8, 2018, through the date of her decision, issued on December 7, 2021. Tr. *Id.*

IV.     **Discussion**

Plaintiff presents four assignments of error: (1) the RFC is not supported by substantial evidence; (2) the ALJ failed to properly consider the three medical opinions in the record; (3) the decision lacks a proper pain evaluation; and (4) the ALJ inappropriately considered Plaintiff's non-compliance with her physician's direction to quit smoking and lose weight. ECF No. 16.

A.  **RFC Evaluation**

Plaintiff first argues the RFC determination is not supported by substantial evidence because the ALJ "improperly drew inferences from the medical reports, and relied on the opinions of non-treating, non-examining medical consultants who relied on the records of treating sources to form an opinion of claimant's RFC." ECF No. 16 at 4. Plaintiff contends the opinions of doctors who have never personally examined the claimant does not qualify as substantial evidence. Plaintiff additionally asserts it was error for the ALJ to rely on the opinions of non-examining physicians because they reviewed the evidence "a year prior to the hearing" and, as a result, the RFC they formulated was "not based upon the full record." *Id.*

As an initial matter, there is no rule preventing an ALJ from finding the opinion of a non-examining state agency consultant more persuasive than that of a treating healthcare provider. *See* 20 C.F.R. § 404.1520c(a); *Fatuma A. v. Saul*, 2021 WL 616522, at *9 (D. Minn. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 615414 (D. Minn. Feb. 17, 2021). With respect to Plaintiff's claim, and similar claims filed after March 27, 2017, the Agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1590c(a); *Guetzloff v. Kijakazi*, 2021 WL 5157487, at *5-6 (W.D. Mo.

Nov. 5, 2021) (discussing change in regulations regarding the analysis of medical evidence) (internal citations omitted). Thus, to the extent Plaintiff attempts to invoke the pre-2017's "treating physician rule" by citing to pre-March 27, 2017 Eighth Circuit cases, this argument fails.

Additionally, a medical consultant's opinion does not need to be discarded simply because it was reached without the benefit of a claimant's full medical record. *See McCoy v. Saul*, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) (holding ALJ did not err in finding medical consultant's opinion persuasive even though that opinion was reached before more than 300 pages of additional medical evidence had been adduced). "[A]n ALJ may embrace a state agency [] consultant's opinion even if it was made before the record was fully developed." *Kuikka v. Berryhill*, 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018) (citation omitted). An ALJ alone is responsible for formulating the RFC. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). As such, an ALJ can rely on the "opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." *Kuikka*, 2018 WL 1342482, at *10. As will be discussed below, the ALJ considered the entirety of the medical evidence, including the records submitted after state agents, Dr. Dennis McGraw and Dr. Donna McCall, provided their opinions on January 25, 2021 and March 31, 2021, respectively.

The portion of the ALJ's determination which summarizes the medical record and discusses the basis for the RFC is notably detailed and spans over eleven pages. Tr. 259-71. The ALJ begins with a summary of Plaintiff's Function Report in which indicates she is able to perform a wide variety of activities of daily living, including preparing meals, showering, doing

7

laundry, grocery shopping twice per week, feeding pets, managing personal care, remembering

to take medication, managing her finances, completing tasks, using a computer, and handling

stress. Tr. 261, 546-56. The ALJ explicitly took note of Plaintiff's self-reported issues with

lifting more than ten pounds, squatting, bending, standing, reaching, walking longer than short

distances, sitting, kneeling, and climbing stairs. *Id.*

The ALJ then summarized Plaintiff's testimony in which she testified to "residual

problems with her back, ankle, hip and knee" resulting from injuries she sustained in a December

2017 motor vehicle accident. Tr. 261, 342-60). Plaintiff described "pain and spasms in her back

that radiated down the leg, shortness of breath, swelling in her legs and feet, vertigo causing her

to fall often and neuropathy." *Id.* The ALJ took note of her claim that no form of treatment was

successful, including injections, chiropractic care, pain medication, ice, heat, and Lidocaine

patches, but she declined surgical intervention despite the medical recommendation. *Id.* Plaintiff

further indicated difficulties in sitting for more than 20 minutes, walking more than one block,

twisting, bending, and sleeping, and stated she would spend 12 to 15 hours per day lying down.

*Id.*

The ALJ reviewed her medical evidence, beginning with her hospitalization and

radiological records from December 31, 2017 to January 3, 2018, related to a motor vehicle

accident. Tr. 261-62, 1150-88. The ALJ acknowledged Plaintiff was diagnosed with "closed

fracture of multiple ribs and acute pain of the right knee" and required multiple doses of

narcotics to ease the pain and help her breathe. *Id.* At the time of discharge, Plaintiff described

her pelvis to be stable with resolved knee pain and the ability to wiggle all digits of her

extremities. *Id.*

Two days after she was discharged, Plaintiff saw her primary care physician, Dr. Artan

Markollari, for a follow up appointment. Tr. 262, 716-17. The ALJ noted that upon examination

8

she was described to have a body mass index ("BMI") of 40.76, normal range of motion in the

neck, no respiratory distress, tenderness in the right breast, normal abdomen and heart, normal

range of motion, and no edema. Tr. 262, 716. Her diagnoses were listed as "[c]losed fracture of

multiple ribs of both sides, initial encounter pain control incentive spirometer to avoid

congestion atelectasis and pneumonia," "[c]ontusion of left chest wall," and asthma. Tr. 262,

717.

On January 10, 2018, Plaintiff appeared to the emergency room with an allergic reaction

to Percocet. Tr. 262, 711-14. She was discharged with her symptoms much improved. Tr. 262,

714. The records note Plaintiff exhibited bilateral low back pain without sciatica. Tr. 262, 713.

Two weeks later, on January 22, 2018, Plaintiff appeared to Dr. Markollari complaining of back

pain and an onset of "swelling and discoloration of the right foot/a[n]kle pain with ambulation."

Tr. 263, 710-11. Plaintiff reported improvement with her respiratory issues. *Id.* A physical

examination revealed no distress, tenderness, wheezing, or rales. *Id.* Dr. Markollari noted

Plaintiff had "bony tenderness, swelling and edema" in her lower left leg and "right calf pain."

Tr. 263, 711. He obtained a venous doppler test ("DVT") of her right leg, which revealed "[n]o

evidence of deep or superficial vein thrombosis involving the right lower extremity." Tr. 263,

866-71.

On April 6, 2018, Plaintiff returned to Dr. Markollari with complaints of sinus pain,

congestion, cough, fatigue, rhinorrhea, and a sore throat. Tr. 263, 705-07. Upon examination,

Plaintiff showed right and left sinus maxillary tenderness, oropharyngeal exudate in her mouth

and throat, no respiratory distress, wheezing, or rales, and normal musculoskeletal range of

motion. Tr. 263, 706-07. Dr. Markollari diagnosed her with "[a]cute recurrent frontal sinusitis"

suggesting a bacterial component warranting antibiotic treatment. Tr. 707.

On June 15, 2018, Plaintiff appeared for an orthopedic visit with complaints of right foot pain and issues with weight bearing, which she attributed to the December 2017 motor vehicle accident. Tr. 263, 702-05. She denied numbness, tingling, and calf pain. Upon examination, she exhibited 1+ edema to the dorsal aspect of the foot, no erythema or warmth, no tenderness over the medial and lateral malleolus, an ability to flex toes and ankle, intact sensation to light touch, with soft and non-tender calf. Tr. 263, 705. An X-ray of the right foot "showed a questionable fracture involving the 4th metatarsal," and an MRI was ordered. *Id.* The MRI was negative for acute fractures, but showed degenerative changes within the midfoot. Tr. 263, 699-702. Because Plaintiff complained of discomfort despite "conservative care," she was recommended to "be seen by foot and ankle surgery for further evaluation and treatment." *Id.*

On July 6, 2018, Plaintiff saw Dr. Markollari due to coughing and wheezing. Tr. 263, 698-99. Plaintiff's diagnosis was described as "moderate persistent asthma with acute exacerbation." Tr. 263, 699. Plaintiff was advised to partake in prophylactic and episodic, or "rescue therapy," and she was advised to quit smoking. *Id.* She had previously been counseled by her treating provider to quit smoking, but she had not done so. *See* Tr. 774.

On February 15, 2019, Plaintiff appeared to urgent care due to complaints of numbness and tingling in her arms, similar intermittent symptoms in her legs, mental cloudiness, weakness, and vomiting. Tr. 263-64, 694-97. She attributed her vomiting to having to clean up after her dog and noted that her cough and shortness of breath could be attributed to her smoking. Tr. 697. She was described to be distressed and anxious, but she was oriented to person, place, and time; maintained clear speech; exhibited no facial droop; and had normal cardiovascular and pulmonary exam results. Tr. 263, 696. Plaintiff was instructed to go directly to the emergency room but, as the ALJ noted, there are no records showing that she followed these instructions. Tr. 264, 697.

On February 25, 2019, Plaintiff visited with Dr. Markollari for a "post-hospital check," which the Court understands to be a follow up to her urgent care visit. Tr. 264, 691-94. A physical examination did not reveal any abnormal results. Tr. 264, 693. The notes indicate she was diagnosed with hypertension and it was recommended she reduce her sodium intake, exercise, and take medication as directed to lower her blood pressure. Tr. 264, 694.

On March 11, 2019, Plaintiff appeared to Dr. Markollari with complaints of right ankle pain. Tr. 264, 690-91. She exhibited decreased range of motion, swelling, ecchymosis, and tenderness, while an MRI revealed "necrotic changes of the central talus dome increasing the concern for hypercoagulable state denies any DVT." Tr. 264, 690. Dr. Markollari provided her with the same recommendations as the prior visit regarding treatment of her hypertension. Tr. 264, 290. He further advised her that recent blood work showed "osteonecrosis of the dome of the talus," which could be exacerbated by smoking. Tr. 691.

Plaintiff appeared for a physical therapy initial evaluation on March 12, 2019, due to her complaints of right ankle pain and muscle weakness. Tr. 264, 685-89. Plaintiff confirmed she had not experienced two or more falls in the past year and did not feel unsteady when walking. Tr. 686. Plaintiff relayed she had broken her foot at least 6 or 7 times but, as the ALJ noted in her determination, there are no medical records to support that claim. Tr. 264, 686. The physical therapist indicated that Plaintiff tolerated the assessment fairly well and described her clinical presentation as "stable and/or uncomplicated." Tr. 689.

From March 12, 2019 to April 23, 2019, Plaintiff attended eleven physical therapy appointments but cancelled six appointments. Tr. 264, 667-85. At her final physical therapy visit, Plaintiff reported her lateral hip pain to be a 2 out of 10 and her right ankle pain to be a 1 or 2 out of 10. Tr. 667. She felt that "overall . . . she is doing well" and her "pain has improved significantly over the past couple of weeks" despite having to do more housework. Tr. 668. The

11

physical therapist indicated she had normal strength in her hip, knee, and ankle; her right ankle range of motion was mostly equal to her left ankle; and her balance and pain had improved significantly. Tr. 265, 668. She had met the majority of her rehabilitation goals and was discharged with the instruction to continue with home exercises. Tr. 265, 669-69.

On June 10, 2019, Plaintiff appeared to Dr. Markollari with complaints of wheezing and numbness. Tr. 265, 665-67. Upon a pulmonary and chest examination, she did not exhibit any respiratory distress, wheezing or rales. Tr. 265, 666. Plaintiff's diagnosis was listed as "fatigue, unspecified." *Id.* Dr. Markollari indicated his concern that she was a "heavy smoker" and exhibited significant unintentional weight loss, noting her BMI at 31.71. *Id.* She was counseled to discontinue tobacco use and receive a series of B12 injections. Tr. 665. A chest X-ray was ordered, which revealed a "5 mm dense nodule . . . overlying the right lower lung" possibly representing a "calcified granuloma." Tr. 265, 828. In response to this result, a CT scan was performed showing a "4 mm perifissural right lower lobe nodule." Tr. 265, 826. In reviewing these results, Dr. Markollari found that no further follow up or testing would be necessary. Tr. 265, 663, 826. Plaintiff was again counseled to avoid alcohol and maintain a low-cholesterol diet. *Id.*

On September 24, 2019, Plaintiff appeared to Dr. Markollari for a B12 injection. Tr. 265, 659-62. Although she had a normal physical examination and there are no notes regarding any complaints, the treatment record indicates a diagnosis of chronic bilateral low back pain without sciatica and a recommendation to apply cold packs and avoid heavy lifting. Tr. 265, 662. A follow up X-ray of the lumber spine showed "multilevel lumbar spondylosis." Tr. 265.

On December 18, 2019, Plaintiff complained of an onset of hip pain. Tr. 265, 654-58. She reported she had mild relief from ice and rest. Tr. 265, 656. She denied any chest pain, abdominal pain, headaches, or shortness of breath. *Id.* X-ray results were negative for a fracture.

12

Tr. 657. Dr. Markollari suspected the pain was from soft tissue swelling and recommended conservative treatment. *Id.* He again advised her to discontinue tobacco use and engage in rescue therapy to help treat her mild intermittent asthma. *Id.* During a follow up on March 20, 2020, Plaintiff was observed to have better B12 levels due to reports of less tingling and numbness in her extremities and reduced fatigue. Tr. 266, 653. Her blood pressure was noted to be well-controlled, and she was again told to quit smoking. *Id.*

On July 14, 2020, Plaintiff reported increased hip and lower back pain. Tr. 266, 648. Plaintiff described the pain as "present all the time" and "only relieved by muscle relaxants which [she] ha[d] not taken for a while." *Id.* Upon examination, Plaintiff exhibited decreased range of motion, tenderness, pain, and spasm. Tr. 266, 649. Dr. Markollari diagnosed her with degenerative disc disease and recommended she apply cold packs and heat and take hydrocodone as needed. *Id.* The following day, Plaintiff attended a physical therapy initial evaluation. Tr. 266, 644-47. She was observed to have no issue with posture, an ability to ambulate independently without an assistive device, decreased range of motion, balance and strength limitations, or muscle guarding. Tr. 266, 646-47. The physical therapist indicated her rehabilitation potential was good with her active participation in plan of care. Tr. 266, 647. On August 17, 2020, Plaintiff told her therapist she "did not want to perform any therapeutic exercises [in physical therapy] because she was feeling better." Tr. 266, 634. Notably, three days prior, she told her therapist that she felt no significant improvement. Tr. 635.

On August 18, 2020, Plaintiff reported bilateral hip pain. Tr. 266, 630. Upon examination, she exhibited decreased strength and tenderness in her right hip, as well as tenderness and spasm in the lumbar spine. Tr. 266, 631. An X-ray revealed "degenerative changes" in Plaintiff's hips and low back. *Id.* She was diagnosed with mild intermittent asthma without complication, gastroesophageal reflux disease without esophagitis ("GERD"),

13

degenerative disc disease, primary localized osteoarthritis of the right hip, and benign hypertension. Tr. 266, 631-33. She was again counseled on smoking cessation and instructed to follow a healthy diet and exercise regimen. Tr. 266, 632. The next day, Plaintiff attended physical therapy and reported an improvement in pain following manual therapy. Tr. 266, 629.

Plaintiff established care with pain management on August 24, 2020. She reported numbness, tingling, and weakness in her legs. Tr. 266, 622-23. An examination revealed reduced active range of motion in the lumbar spine, negative straight leg raises for her left leg, and diminished sensation distal to the ankles in a stocking distribution. Tr. 267. X-rays revealed multilevel lumbar spondylosis. Tr. 267, 623, 628. Plaintiff also displayed sensory deficit consistent with radiculopathy with intact motor function. Tr. 267, 626. Diagnoses included lumbar radiculopathy, lumbar spondylosis, and degenerative disc disease. Tr. 267, 628. A September 1, 2020 MRI revealed "lumbar spondylosis and stenosis greatest at L5-S1 and disc herniation at L5-S1." Tr. 267, 617. Plaintiff was scheduled to receive an epidural steroid injection at two levels. *Id.* She received this injection on September 17, 2020 and reported 50% pain relief. Tr. 267, 610-11.

On October 16, 2020, Plaintiff attended a disability consult with Dr. Markollari. Tr. 267, 606. At this consult, she exhibited decreased range of motion in the lumbar spine with tenderness, pain, and spasm. Tr. 267, 609. Dr. Markollari diagnosed Plaintiff with vitamin B12 deficiency, GERD with esophagitis without hemorrhage, and benign hypertension. *Id.* Plaintiff was again counseled on diet and exercise. *Id.*

At a pain management consultation on October 29, 2020, Plaintiff reported 50% relief for roughly 2-3 weeks after receiving a steroid injection. Tr. 267, 1004-05, 1008. She exhibited an "antalgic gait pattern," normal muscle tone, and no contractures. Plaintiff received another left L5 and S1 transforaminal epidural steroid injection. She returned on December 21, 2020, and

14

noted the relief from the injection lasted longer, roughly 3 to 4 weeks. Tr. 267, 994. She reported hip and back pain and indicated she wanted to try another injection before considering surgery. Tr. 267, 1001.

On January 7, 2021, Plaintiff received bilateral L4, L5, and S1 medial branch nerve blocks to anesthetize the L4-5, L5-S1 facet joints. Tr. 267, 992-93. The next day, she reported "50-60% relief on her left for 2-3 hours and 80% relief on her right" for 3-4 hours. Tr. 267-68, 991.

Plaintiff visited neurosurgery on February 1, 2021, reporting pain radiating down her left leg, primarily in the lateral thigh and occasionally in the anterior thigh. Tr. 268, 1124. Plaintiff indicated that she had "tried physical therapy as well as pain management procedures with only limited success." *Id.* Plaintiff was diagnosed with lumbar foraminal stenosis "due to an impingement on the left at L4-5 and L5-S1." Tr. 268, 1130-31. The notes explained that "it would be reasonable to consider minimally invasive foraminotomies at those two levels" even though Plaintiff was "not a very good candidate for lumbar fusion." Tr. 268, 1131. Ultimately, she was instructed to return as needed. *Id.*

On May 5, 2021, Plaintiff visited Dr. Markollari after a reported fall. Tr. 268, 1117. Plaintiff noted pain at the points of impact, including head, left shoulder, and right wrist. *Id.* She also endorsed visual change, numbness, incontinence, nausea, headaches, and tingling. *Id.* A physical examination revealed a corneal abrasion in the left eye and decreased range of motion, spasms, and tenderness in the low back. *Id.* Dr. Markollari prescribed symptomatic treatment and antibiotic eye drops. Tr. 1119-20.

Plaintiff returned on May 18, 2021, for a follow-up appointment and complained of dizziness and back pain. Tr. 268, 1103. Examination revealed nystagmus in both eyes, blood pressure of 134/86, normal range of motion, normal coordination, and normal reflexes. *Id.* Dr.

Markollari diagnosed Plaintiff with vertigo and recommended a CT scan due to pulmonary nodules. *Id.* The subsequent CT scan performed on May 28, 2021, revealed no abnormalities and mild scarring with no significant change. Tr. 268, 1100-01.

On June 9, 2021, Dr. Markollari ordered X-rays of Plaintiff's thoracic spine which revealed moderate degenerative disc disease. Tr. 268, 1096. When Plaintiff returned on June 18, 2021, for a follow-up appointment, Dr. Markollari assessed "lumbar radiculopathy significant impairment, some weakness with multiple falls" despite the absence of additional abnormal symptoms or findings. Tr. 268, 1093.

Plaintiff visited an urgent care facility on July 15, 2021, complaining of left knee, ankle, and foot pain after a fall a few days prior. Tr. 268, 1145. Examination revealed tenderness in the left knee with full range of motion and only mild discomfort and tenderness to palpation in the ankle and foot. Tr. 269, 1144. X-rays revealed no acute fracture or dislocation in Plaintiff's foot or ankle. Tr. 269, 1143-44. She was diagnosed with an ankle sprain and also provided a knee brace. Tr. 269, 1140.

On August 10, 2021, Plaintiff met with an orthopedic surgeon. Tr. 263, 1084. Plaintiff described a "valgus type injury to her left knee" and indicated instability and pain over the medial aspect of the knee. Tr. 269, 1084. She had a "small effusion" and "a positive McMurray with pain," but was able to "fully extend her knee," "flex to 230 degrees," and was "stable to varus and valgus stress." Tr. 269, 1088. The X-rays from Plaintiff's urgent care visit appeared to show mild medial joint space narrowing. *Id.* Plaintiff was diagnosed with left Medial Collateral Ligament ("MCL") sprain and ordered an MRI to evaluate for possible meniscal tear. Tr. 269, 1089.

On August 11, 2021, Plaintiff appeared to neurosurgery for back and leg pain. Tr. 269, 1058. Examination revealed no significant tenderness to palpation along the lumbar spine,

lumbar flexion was 75 degrees, and extension was 20 degrees with no obvious lumbar spinal deformity. Tr. 269, 1060. The doctor recited Plaintiff's history of care, to which she explained that she experienced partial relief, but the pain returned after a few weeks. Tr. 269, 1058. Plaintiff's last imaging showed "degenerative changes with spinal, lateral recess and foraminal stenosis at L4-5 and L5-S1 levels" which could contribute to her pain symptoms. Tr. 269, 1061. Plaintiff was recommended decompressive laminectomies and bilateral foraminotomies at those levels, and she indicated that she would consider those procedures. *Id.*

Plaintiff followed-up with Dr. Markollari on August 18, 2021, for hypertension. Tr. 269, 1076. Her blood pressure measured 156/90 with normal heart rate and rhythm, normal heart sounds, no respiratory distress, and no chest wall tenderness. *Id.* Dr. Markollari adjusted Plaintiff's blood pressure medication and counseled her on healthy habits. Tr. 269, 1077. On that same day, the MRI of her left knee revealed a "grade 1-2 sprain of the MCL with moderate overlying soft tissue edema . . . and proximal patellar tendinosis. Tr. 269, 1081. On August 26, 2021, Plaintiff met with her orthopedic surgeon regarding her left knee. Tr. 269, 1069. She was given an "unloader brace for pain and stability" in her knee and was instructed to follow-up in four weeks. *Id.* at 269, 1074. (Tr. 269, 1074).

After this extensive review of the medical evidence, the ALJ confirmed that she also took into account Plaintiff's obesity when evaluating the evidence and in determining Plaintiff's RFC. Tr. 270. The ALJ then determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical record as it reflected generally routine and conservative care with infrequent visits to physicians for disabling symptoms. *Id.* Although Plaintiff complained of back pain, the ALJ explained that the evidence showed the objective findings were "essentially normal." *Id.* The ALJ also observed Plaintiff did

not pursue additional care with a neurosurgeon despite the recommendation of lumbar spine surgery. *Id.* Moreover, Plaintiff reported pain relief from physical therapy.

The ALJ noted Plaintiff's failure to follow recommendations made by her doctors, as detailed in the record, demonstrated that her symptoms may not have been as serious as she alleged. Tr. 270. Plaintiff's failure to adhere to medical recommendations to stop smoking, exercise frequently, and alter her diet indicated that the symptoms were not as serious as she alleged and were instead consistent with the "minimal, tolerable, and nondisabling degree of alleged symptoms." *Id.*

The final portion of the ALJ's RFC determination considered the medical opinion evidence offered by Dr. McCall, Dr. McGraw, and Dr. Markollari. Though discussed in greater detail below, the ALJ evaluated these opinions, finding Drs. McCall and McGraw to be partially persuasive, and Dr. Markollari to be unpersuasive, in light of the other medical and non-medical evidence. Tr. 271.

Based on the thorough RFC assessment and summary of the record, the Court cannot agree with Plaintiff that the ALJ failed to identify substantial evidence to support the RFC finding. The ALJ's considerable undertaking in reviewing the voluminous medical record, coupled with her evaluation of the medical opinion evidence and Plaintiff's testimony, illustrates the expansive body of evidence supporting the RFC determination. The ALJ carefully examined the evidence, discussed various objective findings, and cited to the records detailing Plaintiff's physician visits and tests. "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The ALJ's RFC determination is supported by her extensive review of the record, including her analysis of the

18

objective medical evidence, medical opinion evidence, and Plaintiff's own testimony; therefore, the Court finds the ALJ's RFC assessment is supported by substantial evidence on the record as a whole.

### B. Medical Opinions

Plaintiff argues the ALJ insufficiently evaluated the persuasiveness of the three medical opinions within the record. The first two opinions were submitted by non-examining state agent physicians, Dr. McCall and Dr. McGraw, on January 25, 2021 and March 31, 2021, respectively. Tr. 372-76, 387-90. The ALJ found these opinions partially persuasive. The third opinion was submitted by Dr. Markollari in October of 2021. Tr. 1134-37. The ALJ found this opinion unpersuasive.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a

medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted).

### 1. *Opinions of Drs. McCall and McGraw*

On January 25, 2021, Dr. McGraw conducted a non-examining medical evaluation for Plaintiff's disability benefits. Tr. 367-78. On March 31, 2021, Dr. McCall conducted an additional evaluation at the reconsideration level. Tr. 380-93. As the ALJ noted, both Drs. McGraw and McCall concluded that Plaintiff was capable of "sedentary work except frequent climbing of ramps and stairs but never ladders, ropes and scaffolds and never crawling, with no exposure to fumes, odors, dusts, gases, poor ventilation, etc." Tr. 271, 375 386. The ALJ found these opinions partially persuasive, explaining the record did not justify such severe limitations for Plaintiff's asthma. Tr. 271, 374, 389. The ALJ also noted that the record supported greater restrictions on Plaintiff's ability to climb ramps and stairs, concluding that she could "occasionally" do so as opposed to "frequently." Tr. 260, 271, 373. Finally, the ALJ determined that Drs. McCall and McGraw failed to provide clear reasoning for their restrictions on crawling. Tr. 271, 373, 388.

The Court does not find error in the ALJ's evaluation of these medical evaluations by Drs. McCall and McGraw. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). The ALJ found the opinions of Drs. McCall and McGraw partially persuasive because, as part of her entire RFC analysis, a comprehensive review of the record revealed that portions of these opinions were unsupported by and inconsistent with the record as a whole. Tr. 271.

Specifically, the objective evidence repeatedly indicated that Plaintiff had clear lungs and no respiratory distress in several physical evaluations. Tr. 609, 627, 631, 653, 661, 666, 696, 706, 1008, 1060, 1066, 1088, 1092, 1104, 1129. As the ALJ decision noted, Plaintiff's medical records routinely established that she had no wheezing, no rhonchi, and no rales, which was objective medical evidence that did not support and was inconsistent with the opinions of Drs. McCall and McGraw to the extent they prohibited any exposure to dusts and fumes. Tr. 263-65, 271, 374, 389. Relying on this medical evidence, the ALJ found that the record did not support and was inconsistent with the proposed pulmonary limitations in the medical evaluations by Drs. McCall and McGraw. Tr. 271, 632; *Hedgecorth v. Kijakazi*, 2023 WL 7155548 at *11 (E.D. Mo. Oct. 31, 2023).

The ALJ also determined that the postural limitations offered by Drs. McCall and McGraw were unsupported and inconsistent with the evidence due to Plaintiff's complaints of back pain and the other medical evidence in the record as a whole. *See* Tr. 271, 648, 662, 710, 713, 1001. The ALJ noted that the objective medical evidence regularly detailed Plaintiff's complaints of back pain, which made postural activities like stooping and kneeling difficult. The notes from Plaintiff's physicians detailed back pain where symptoms were "aggravated by walking and standing" and treatment emphasizing "postural techniques" and "posture/body

mechanics education." *See, e.g.,* Tr. 614, 648, 1001. The ALJ then measured this objective medical evidence against the findings of the state physicians, noting that this evidence contradicted the opinions of Drs. McCall and McGraw which would not have provided proper limitations on Plaintiff's ability to stoop, kneel, and crouch. Tr. 271. This determination utilized the supportability and consistency factors as the ALJ measured these medical opinions against the objective medical evidence, Plaintiff's testimony, and the other evidence in the record.

Finally, the ALJ analyzed the crawling limitations proposed by the state physicians and determined there were no clear reasons for them due to the absence of supporting facts from the medical records or explanations from the doctors that would explain their purpose. Tr. 271. The state physicians opined that Plaintiff could "never" crawl, but explained this was because of Plaintiff's "spinal disorder" without any further justification or clarification. Tr. 373, 388. The ALJ's review and analysis of the medical evidence found that the record did not support such a severe limitation given the lack of evidence that discussed any restrictions on crawling. Tr. 260-71; *See Burke v. Kijakazi*, 2022 WL 4130791 at *8 (E.D. Mo. Sept. 12, 2022) (citing *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration)). There was no reference in these medical records that would support or be consistent with such a drastic limitation on the Plaintiff's RFC, prompting the ALJ to use the existing medical evidence to establish a less stringent restriction.

The ALJ decision reflected a consideration of the supportability and consistency factors as the ALJ determined the record was devoid of evidence that would support or be consistent with this aspect of the medical opinions of Drs. McCall and McGraw. The fact that the ALJ did not use the exact word "supportability" is not determinative; word choice alone does not warrant reversal. *Atwood v. Kijakazi*, 2022 WL 407119 at *5 (E.D. Mo. Feb. 10, 2022). The ALJ

22

properly assessed these medical opinions as part of her entire RFC analysis, which included the in-depth review of Plaintiff's medical records, her Function Report, and her hearing testimony. Pursuant to that review, the ALJ appropriately found the opinions of Drs. McCall and McGraw partially persuasive by using the consistency and supportability factors to measure these opinions against the other evidence in the record.

### 2. *Opinion of Dr. Markollari*

In October of 2021, Dr. Markollari provided a Physical RFC Questionnaire, which the ALJ summarized. Tr. 271, 1134-37. This opinion listed "COPD, spinal stenosis at L5-S1, and lumbar spondylosis" as the diagnoses, but did not reference anxiety or depression even though both were noted throughout Plaintiff's medical history. *Id.* Dr. Markollari opined that Plaintiff would constantly experience pain severe enough to interfere with attention and concentration and could only sit or stand 10 minutes at a time, up to a total of less than two hours per workday. Tr. 271, 1135. Dr. Markollari also determined that Plaintiff would need periods of walking to change positions every 11 to 15 minutes, unscheduled breaks every 10 minutes, and an assistive device while walking. Tr. 271, 1135-36. Dr. Markollari also found that Plaintiff could rarely lift or carry less than 10 pounds, and never lift anything heavier, and was able to occasionally look up or down, turn her head, and hold it static. Tr. 271, 1136. Finally, Dr. Markollari wrote that Plaintiff could use her hands for fine and gross manipulation for only 10% of the day, could reach overhead with her right arm 5% of the time and with her left arm 10% of the time during an 8-hour workday, and would miss work more than 4 days a month as a result of the impairments or treatment. Tr. 271, 1136-37.

The ALJ found Dr. Markollari's opinion unpersuasive. First, she noted that this opinion was "wholly inconsistent" with the disability consult in October 2020, "which reflected essentially normal findings other than pain and limited range of motion in the lumbar spine." Tr.

271. The ALJ also noted that the findings of that visit were "essentially unchanged for a year." *Id.* The ALJ also observed that "examination findings by all of her providers did not support that she was so severely limited with fine and gross manipulation or reaching." *Id.* Finally, the ALJ determined that the use of an assistive device while walking was not supported, as there was no reference to a device in any of Plaintiff's medical records and she "routinely demonstrated normal gait without an assistive device." Tr. 271.

The Court finds no error in the ALJ's evaluation of Dr. Markollari's medical opinion. Again, because this evaluation occurs within the scope of the entirety of the ALJ's RFC analysis, rather than in isolation, it reflects an appropriate consideration of the supportability and consistency factors. *See Brown v. Kijakazi*, 2022 WL 4546886 at *5 (E.D. Mo. Sept. 29, 2022).

The ALJ cited to evidence from the medical records which was inconsistent with Dr. Markollari's opinion. For example, the ALJ's finding that Dr. Markollari's Physical RFC Questionnaire opinion is "wholly inconsistent" with his disability consultation in October of 2020, which included "essentially normal findings other than pain and limited range of motion in the lumbar spine." Tr. 271, 606-09. This reflects a consideration of the supportability and consistency of Dr. Markollari's opinion. *Id.*; *See Brown*, 2022 WL 4546886 at *5. The ALJ also determined that "the record simply does not support limiting [Plaintiff] to walking less than a block, sitting for less than two hours nor for the taking of unscheduled breaks every 10 minutes." Tr. 271. This determination was based upon the ALJ's review of the record, including the medical evidence which did not include details that would support or be consistent with this limitation. *See* Tr. 261-69, 271; *See McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record.").

24

The ALJ also established that, based upon her review of the findings of Plaintiff's medical providers, there was no support for the limits on Plaintiff's fine and gross manipulation. Tr. 271. The ALJ's review of the record reflected standard coordination, contradicting Dr. Markollari's limitations on Plaintiff's fine and gross manipulation and demonstrating the use of the supportability and consistency factors. Tr. 271, 632, 666, 770. Finally, the ALJ noted that the record did not include evidence that would support or be consistent with Dr. Markollari's opinion that Plaintiff would need to use an assistive device when walking, as her review of the medical evidence revealed that she "routinely demonstrated normal gait" at her medical visits without any use or need of an assistive device. Tr. 271, 627, 632, 666, 668, 675, 1000, 1060, 1130.

Therefore, the Court does not find error in the ALJ's analysis of the lack of consistency and supportability of Dr. Markollari's opinion.

### C.  Pain Evaluation

Plaintiff argues the ALJ improperly evaluated her subjective pain complaints because they are "conclusory" and "inaccurate," a mischaracterization of the evidence in the record, and fail to address the *Polaski* factors. ECF No. 16 at 8-9. Plaintiff also contends that the ALJ failed to make any "express credibility determinations" detailing the reasons for discrediting Plaintiff's pain complaints. *Id.* at 13.

As a preliminary matter, Plaintiff's brief refers, in part, to medical evidence and procedures created after the ALJ's decision. This additional evidence was presented to the Appeals Council as part of Plaintiff's request for review, but the Appeals Council determined these records were either insufficient to change the outcome of the ALJ's decision or related to a time period after the ALJ's decision on December 7, 2021. Tr. 1-2; 20 C.F.R. § 404.970(a)(5). The Appeals Council therefore denied Plaintiff's request for review, leaving the ALJ's decision

as the final decision. Tr. 1. Because the Appeals Council did not review the ALJ's decision, and because Plaintiff does not challenge the Appeals Council's evaluation of the evidence or denial, we shall only review evidence available to, or discussed by, the ALJ. § 404.970(a)(5); *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

Social Security Ruling 16-3p eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the well-known factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which previously guided an ALJ's analysis of subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider the objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (i.e., pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* Courts typically defer to an ALJ's credibility determination. *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to Polaski or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ acknowledged her obligation to assess Plaintiff's subjective complaints by expressly citing to 20 C.F.R. § 404.1529, SSR 16-3p, and the *Polaski* factors, which outline the requirements for evaluating subjective pain complaints. Tr. 260. The ALJ is "not required to

discuss each *Polaski* factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)).

As described above, the ALJ summarized Plaintiff's medical records, Function Report, and hearing testimony as part of the RFC analysis. The Function Report indicated that Plaintiff "lived with family in a house and spent a typical day preparing her own meals, showering, and attempting daily activities." Tr. 261, 546-49. Plaintiff "asserted difficulty lifting more than five to 10 pounds, squatting, bending, standing, reaching, walking longer than short distances, sitting, kneeling, and climbing stairs," and admitted she was capable of a broad range of daily activities, including preparing meals, showering, doing laundry, grocery shopping twice per week, feeding pets, managing personal care, remembering to take medication, managing her finances, completing tasks, using a computer, and handling stress. *Id.*

The ALJ also reviewed Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms," finding them inconsistent with the evidence in the record. Tr. 270. In formulating the RFC, the ALJ explicitly considered the medical evidence which included her improvement with steroid injections and physical therapy, Tr. 264, 611-12, 613-21, 629- 30, 633-48, 667-89, 1008-09, the wide variety of activities she was able to perform, Tr. 261, 547-50, and the largely, though not exclusively, normal physical exam findings. Tr. 270, 608-09, 632, 649, 653, 657, 661, 666, 707, 717, 1060, 1066, 1092, 1104, 1119. The ALJ also used Plaintiff's non-compliance with the recommendations made by her doctors to stop smoking and lose weight as one part of the consistency analysis. Tr. 270, 606, 632, 695, 699, 1007.

The Court finds that the ALJ appropriately discounted Plaintiff's allegations of pain based on the objective medical evidence. The ALJ's extensive review of the evidence demonstrates her consideration of medical and non-medical evidence in evaluating Plaintiff's

subjective pain allegations. Tr. 260-69. The ALJ utilized the factors required by 20 C.F.R. § 404.1529, SSR 16-3p, and *Polaski* during her analysis of Plaintiff's daily activities, the effectiveness of Plaintiff's treatment in resolving her symptoms, and the functional restrictions Plaintiff's pain imposed on her, all of which were compared to the objective medical evidence analyzed by the ALJ. Tr. 270; *See Lentz v. Kijakazi*, 2022 WL 4355199 at *6-7 (E.D. Mo. Sept. 20, 2022) (comparing Plaintiff's subjective complaints to the objective medical evidence). The Eighth Circuit has held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citation omitted). The ALJ properly utilized the factors outlined in 20 C.F.R. § 404.1529, SSR 16-3p, and *Polaski* to evaluate Plaintiff's subjective pain allegations. Therefore, the Court finds no error in the ALJ's analysis.

### D.  Non-Compliance

Plaintiff's final argument is that the ALJ failed to properly evaluate non-compliance with recommendations from her doctors. ECF No. 16 at 14. Specifically, Plaintiff asserts the ALJ used this non-compliance to improperly deny benefits pursuant to SSR 18-3p.[2]

Plaintiff's argument neglects the distinction between non-compliance as it relates to SSR 18-3p and non-compliance as it relates to consistency evaluations for Plaintiff's subjective complaints of pain. Under SSR 18-3p, a claimant's case may be denied if the claimant is found to be disabled but is non-compliant with his or her prescribed treatment, and compliance with such treatment would restore the claimant's ability to work. *Phillips v. Colvin*, 2016 WL 126371 at *9 (E.D. Mo. Jan. 12, 2016). Alternatively, an ALJ may use a claimant's non-compliance with

---

[2] Though Plaintiff cites to SSR 82-59, that rule was repealed and replaced by SSR 18-3p effective October 29, 2018. We therefore refer to SSR 18-3p instead.

prescribed treatment as part of his or her evaluation of subjective pain allegations. *See, e.g.*, *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking.") (citations omitted).

The Court finds no error with the ALJ's consideration of non-compliance. The ALJ noted that Plaintiff's failure to stop smoking or lose weight through diet and exercise contradicted the repeated advice from her doctors. Tr. 270, 606, 632, 695, 699, 1007. The ALJ explained that Plaintiff's "failure to [adhere to medical advice] is one indication, among others, which suggests she is not motivated fully to return to substantial gainful activity and is not accurately representing her level of functioning." Tr. 270. This demonstrates the ALJ did not use Plaintiff's non-compliance to deny benefits under SSR 18-3p; rather, she used it as part of the consistency evaluation of Plaintiff's subjective pain allegations. *Id.* Nor did the ALJ use Plaintiff's non-compliance as the sole factor in her consistency evaluation; instead, the ALJ's discussion of non-compliance is part of her larger analysis of Plaintiff's subjective complaints of pain. *Id.* This evaluation of non-compliance as part of the ALJ's consistency assessment is appropriate; therefore, the Court finds no error.

For the foregoing reasons, the Court finds that the ALJ's opinion is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Cathy F. Pauley's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Martin J.

O'Malley for Kilolo Kijakazi in the court record of this case.

So Ordered this 9th day of January, 2024.

_____

STEPHEN R. WELBY

UNITED STATES MAGISTRATE JUDGE